Ryan E. Hatch
Hatch Law PC
13323 Washington Blvd, Suite 302
Los Angeles, CA 90066
Work: 310-279-5076
Mobile: 310-435-6374
Fax: 310-693-5328
ryan@hatchlaw.com

*Attorney for Petitioner Jumio Corporation*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUMIO CORPORATION,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>FACETEC, INC.<br><br>　　　　Respondent. | Case No. 5:23-mc-80263<br><br>[Related case: *FaceTec, Inc. v. iProov Ltd.*, Case No. 2:21-02252-RFB-BNW (D. Nev. 2021)]<br><br>**NONPARTY JUMIO CORPORATION'S MOTION TO QUASH PLAINTIFF'S SUBPOENA** |

### NON-PARTY JUMIO CORPORATION'S MOTION TO QUASH SUBPOENA

Non-Party Jumio Corporation ("Jumio"), by and through the undersigned counsel, hereby moves this Court for a protective order quashing the subpoena served on Jumio by plaintiff FaceTec, Inc. This Motion is made and based upon the Memorandum of Points and Authorities below, the accompanying declaration of Jason Campbell, and any oral argument the Court may entertain, and the other papers and pleadings in this action.

Dated: October 11, 2023            **HATCH LAW, PC**

*/s/ Ryan E. Hatch*
Ryan E. Hatch
Hatch Law, PC
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Work: 310-279-5076
Mobile: 310-435-6374
Fax: 310-693-5328
ryan@hatchlaw.com

*Attorneys for Nonparty,*
*Jumio Corporation.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Jumio moves to quash this overly broad subpoena, which asks Jumio to undergo the burden of searching and producing documents that are not relevant or proportional to this action and that FaceTec can obtain directly from iProov.

Jumio is not a party to this action.  It is a customer of the Defendant, iProov Ltd.  All three document requests in the subpoena seek documents which, by definition, should equally be in the possession of iProov – communications between Jumio and iProov relating to FaceTec, verifications performed by Jumio using iProov software, and payments made by Jumio to iProov.  The purpose of this subpoena appears to be primarily to harass Jumio, which is currently involved in an arbitration proceeding with FaceTec, and to obtain documents which are not relevant to this action so that they can be used in that arbitration proceeding.

### FACTS

The Parties

Jumio is a pioneer in the field of online identity verification and the world's leading provider of online identity verification services.  (*See* Declaration of Jason Campbell ("Campbell Decl.") ¶ 2.)  As stated above, Jumio is a customer of defendant iProov.   iProov provides liveness detection software used by Jumio to perform a "liveness check" to ensure that a live human is present during its online identify verification procedure by means of facial verification.  (*See id.* ¶ 4.)

FaceTec provides its own liveness detection software and is a competitor of iProov.  It is also a competitor of Jumio in providing online identity verification services.  (*Id.*)  FaceTec previously provided liveness detection software to Jumio.  However, because of numerous problems with FaceTec and the performance of its software, Jumio did not renew its agreement with FaceTec, which expired in October 2021.  (*Id.*)  Jumio transitioned its customer base to iProov, a process which took many months to complete.  (*Id.*)

While Jumio is not a party to this action, Jumio and FaceTec are currently involved in an arbitration proceeding in which each side has brought claims for breach of contract against the other arising out of FaceTec's provision of services to Jumio.  (*Id.* ¶ 5.)

The Underlying Action

Jumio understands that in this action, plaintiff FaceTec asserts three claims against iProov. First, FaceTec alleges that iProov's liveness detection product, Liveness Assurance, infringes two of FaceTec's United States patents. (Declaration of Ryan E. Hatch ("Hatch Decl."), Ex. A at 10) These patents, both entitled "Facial recognition authentication system including path parameters," relate to the technical characteristics of FaceTec's facial recognition software. (*Id.* at 6). Second, FaceTec alleges that iProov did not comply with the terms and conditions of its "Spoof Bounty" program, in which FaceTec offered money to anyone who could successfully "spoof" FaceTec's face recognition product. (*Id.* at 10.) And third, FaceTec alleges that iProov interfered with contractual relationships FaceTec contends existed between FaceTec and certain iProov's employees, related to the same "Spoof Bounty" program. (*Id.* at 10-11.) iProov has denied these allegations and asserts that FaceTec infringes one of its patents.

The Subpoena

On or around August 14, Jumio received a subpoena from Plaintiff. Hatch Decl., Ex. B (the "Subpoena"). In the Subpoena, FaceTec requested production of the following categories of documents:

(1) "All COMMUNICATIONS between YOU and iPROOV that REFER or RELATE TO FACETEC."

(2) "DOCUMENTS sufficient to describe and establish ALL VERIFICATIONS ever performed by or on behalf of JUMIO using an iPROOV ACCUSED INSTRUMENTALITY, INCLUDING ANY and ALL uses of an iPROOV ACCUSED INSTRUMENTALITY to perform a 'liveneness detection ... to detect whether a person using a biometric verification method is a live person or a fake,' see, e.g., https://www.jumio.com/technology/live-detection/, including documents sufficient to identify (1) the commercial name or designation of the iPROOV ACCUSED INSTRUMENTALITY performing each such VERIFICATION, and (2) the date and result of each such VERIFICATION."

(3) "DOCUMENTS sufficient to describe any and all payments or things of value provided by JUMIO to iPROOV in connection with any VERIFICATION performed by or on behalf of JUMIO using an iPROOV ACCUSED INSTRUMENTALITY."

Ex. A at 8-9.

The parties agreed that Jumio's time to object to the subpoena and to file a motion to quash

would be extended to October 11, 2023.  (Hatch Decl. ¶ 7.)  Jumio timely filed objections and filed this motion to quash the Subpoena.

## ARGUMENT

### I. LEGAL STANDARD

Fed. R. Civ. P. 45(d)(3)(A) provides that a subpoena must be quashed if it, *inter alia*, "(iv) subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A).

Further, Fed. R. Civ. P. 26(c) provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." Indeed, "Rule 26(c), setting forth grounds for protective orders, was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982).

The Ninth Circuit has construed these rules to give district courts broad discretion to grant protective orders and motions to quash subpoenas imposing undue burden. *See Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules of Civil Procedure explicitly provide for limitations on discovery [;] . . . Rule 26(c) and Rule 45(d)(3) give ample discretion to district courts to quash or modify subpoenas causing 'undue burden.'"); *see also Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 696 (D. Nev. 1994) ("The court will quash or modify a subpoena which subjects a person to undue burden[.] . . . The court may also make any order which justice requires to protect a party or person from undue burden, oppression or expense.").

### II. THE DOCUMENTS SOUGHT IN THE SUBPOENA CAN BE REQUESTED FROM DEFENDANT IPROOV

The subpoena should be quashed because all of the documents that FaceTec is seeking can and should be requested from the Defendant iProov.

"Courts routinely disallow discovery from third parties where the same discovery is easily obtained from a party." *Akkawi v. Sadr*, No. 2:20-cv-1034 MCE AC, 2022 U.S. Dist. LEXIS

5

226261, at *5 (E.D. Cal. Dec. 15, 2022), *citing Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC-RMI, 2019 U.S. Dist. LEXIS 149896, 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019) and *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *see also See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing a subpoena issued to a non-party witness, holding that "the[] requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the] nonparty…."), *citing See Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery restrictions may be even broader where target is nonparty).

Here, the information sought in all three requests in the Subpoena can simply be requested from the defendant iProov. The first request in the Subpoena seeks all communications between Jumio and iProov that refer or relate to FaceTec. Ex. A at 8. But any communications between Jumio and iProov would be in the possession of iProov, the named defendant in this case. (See Campbell Decl. ¶ 4.) FaceTec has already requested this same information in its Request for Production No. 58 to iProov, which seeks "ALL COMMUNICATIONS with Jumio, Inc., REFERRING OR RELATING TO FACETEC, the FACETEC SPOOF BOUNTY PROGRAM, ANY FACETEC biometric security technology product, or this LITIGATION." Ex. C (FaceTec's 1st Set of RFPs) at 23; *see also Id*., RFP 59 (seeking "ALL COMMUNICATIONS with any customer of FACETEC or any customer or prospective customer of iPROOV REFERRING OR RELATING TO FACETEC, the FACETEC SPOOF BOUNTY PROGRAM, ANY FACETEC biometric security technology product, or this LITIGATION."); FaceTec's 1st Set of Interrogatories (Ex. D) at 12, 13 and 15 (Interrogatory Nos. 8, 14, and 17). There was no need for FaceTec to subpoena Jumio for this information that they can and have already requested from iProov.

The second request in the Subpoena seeks documents regarding "verifications" performed by or on behalf of Jumio using an iProov accused instrumentality. *Id*. at 8. But general statistical information regarding use of iProov accused instrumentalities, to the extent relevant, should also be in the possession of iProov. (See Campbell Decl. ¶ 7.). Again, FaceTec has already requested

this information from iProov, seeking "DOCUMENTS sufficient to describe and establish ALL VERIFICATIONS ever performed using an iPROOV ACCUSED INSTRUMENTALITY, INCLUDING ALL use of an iPROOV ACCUSED INSTRUMENTALITY in connection with "confirm[ing] that an individual …. [is] a real person" (www.iproov.com/iproov-system/iproov-products-forbiometric-authentication/basicface-verifier), by providing (1) the location of each user seeking VERIFICATION, (2) the IDENTITY and location of the iPROOV customer for whom the VERIFICATION was performed, (3) the commercial name or designation of the iPROOV ACCUSED INSTRUMENTALITY performing the VERIFICATION, and (4) the date and result of each requested VERIFICATION." Ex. C at 11, RFP 3; *see also* Ex. D at 10, Interrogatory No. 1 ("Describe ALL VERIFICATIONS ever performed using an iPROOV ACCUSED INSTRUMENTALITY…."). FaceTec had no basis to subpoena non-party customer Jumio for information that it has already requested iProov.

Lastly, the third request in the Subpoena seeks documents regarding payments provided by Jumio to iProov in connection with any verification performed using an iProov accused instrumentality. *Id*. at 9. iProov would also have information relating to any payments it received from Jumio, and FaceTec has once again already requested this information from iProov. See Ex. C at 12, RFP 6 ("DOCUMENTS sufficient to set forth and establish ALL revenues, costs, and profits attributable to ANY VERIFICATION using an iPROOV ACCUSED INSTRUMENTALITY, broken down for each calendar month and calendar year."); *see also* Ex. D at 11, Interrogatory No. 4 ("Set forth ALL revenues, costs, and profits attributable to ANY VERIFICATION ever performed using an iPROOV ACCUSED INSTRUMENTALITY, INCLUDING ALL use of an iPROOV ACCUSED INSTRUMENTALITY in connection with "confirm[ing] that an individual …. [is] a real person" (www.iproov.com/iproov-system/iproov-productsfor-biometric-authentication/basicface-verifier), broken down by calendar month and calendar year.").

Because it is seeking documents that FaceTec can obtain—and is already seeking—from iProov, the Subpoena should be quashed under under Rule 45(d)(3)(A) and Rule 26(b)(2)(C)(i), which requires courts to limit discovery otherwise allowed if "the discovery sought is unreasonably

7

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"

### III. THE SUBPOENA IS OVERBROAD, UNDULY BURDENSOME, AND WAS SERVED FOR AN IMPROPER PURPOSE

In addition, the Court should quash the subpoena because it is overbroad, unduly burdensome and was served for an improper purpose—to obtain discovery for the arbitration proceeding between FaceTec and Jumio.

The Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *CoStar Grp., Inc. v. Restb.AI, LLC*, No. MC 22-00228-CBM (ASx), 2023 U.S. Dist. LEXIS 42022, at *6 (C.D. Cal. Mar. 10, 2023), citing *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005). Here, the burden on Jumio in responding to the Subpoena, compared with the value of the information to FaceTec, weighs strongly in favor of quashing the Subpoena.

Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *CoStar*, 2023 U.S. Dist. LEXIS 42022 at *6, citing *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979), *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004).

In particular, FaceTec's first request here, which seeks all communications between FaceTec and iProov that "refer or relate" to FaceTec, is vastly overbroad and on its face would sweep in numerous documents that have nothing to do with the claims at issue in this litigation. The transition of Jumio's customer base from FaceTec's liveness detection software to iProov's liveness detection software was a process that took many months to complete. (Campbell Decl. ¶ 4.) There were numerous communications between Jumio and iProov relating to the procedure for transitioning these customers that would have absolutely nothing to do with this litigation. (*Id.*) Such communications do not relate to the manner in which iProov's software performs or to FaceTec's first and second claims for patent infringement. Ex. A at ¶¶ 38-56. They also have nothing to do with FaceTec's Spoof Bounty Program, which is the subject of FaceTec's third and

fourth claims for interference with the contractual relationship between FaceTec and the iProov personnel who participated in the program. Ex. A at ¶¶ 57-66. None of the allegations in FaceTec's claims are specific to Jumio, which is not a party to this case. It is difficult to see how communications between iProov and Jumio would relate to any of FaceTec's four claims at all, but certainly FaceTec has made no effort to tailor its requests to documents that are relevant, to the extent such documents even exist. Moreover, as noted above, any communications between iProov and FaceTec, to the extent relevant at all, can simply be requested from iProov.

The true purpose of FaceTec's sweeping request for all communications between Jumio and iProov that "refer or relate" to FaceTec appears to be to obtain documents to inform FaceTec's prosecution and defense of the claims in the arbitration proceeding between FaceTec and Jumio. In that arbitration FaceTec is also seeking discovery of communications between Jumio and iProov, including claims that relate to FaceTec. (Campbell Decl. ¶ 5.) Jumio is disputing FaceTec's entitlement to those communications in the arbitration. (*Id.*) FaceTec is trying to do an end run around the arbitration procedures by subpoenaing the documents here.

FaceTec's second request seeks all documents sufficient to describe and establish all verifications ever performed by or on behalf of Jumio using an iProov accused instrumentality, including documents sufficient to identify the name of the iProov accused instrumentality performing each such verification, and the date and result of each such verification. This request seeks highly confidential information relating to Jumio's customers and would be burdensome for Jumio to comply with. (Campbell Decl. ¶ 7.) It has no relevance to whether or not the accused instrumentalities infringe the asserted patents or whether the asserted patents are valid, or to the claims involving the Spoof Bounty Program. To the extent it has any relevance to damages, the pertinent information can be obtained directly from iProov, just as the information relating to FaceTec's third request (documents sufficient to describe payments provided by Jumio to iProov). (*Id.* ¶ 8.) Because this information has already been requested from iProov, there is no reason to harass Jumio with the burden of responding to these requests as well.

### IV.   THE SUBPOENA SHOULD BE QUASHED BECAUSE IT IS INVALID ON ITS FACE

In addition, the Subpoena should be quashed because it requires production of documents

more than 100 miles from any Jumio place of business, and is therefore invalid on its face. "A subpoena may command … production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Rule 45(c)(2)(A). The Subpoena demands production of documents in Newport Beach, California. Ex. B at 2. However, Jumio is headquartered in Sunnyvale, California, and the Sunnyvale office is Jumio's only facility in California. (Campbell Decl. ¶ 2.) Jumio has no facilities in Newport Beach, California or within 100 miles of Newport Beach. *Id.* The Subpoena is therefore invalid on its face. *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12 CV 3393, 2014 U.S. Dist. LEXIS 165227, 2014 WL 6706873, at *1 & n.1 (N.D. Cal. Nov. 25, 2014) (holding that a Rule 45 subpoena specifying the place of compliance as more than 100 miles from nonparty's headquarters was "invalid on its face").

The Subpoena attempts to skirt this facial defect by alternately specifying the "place" of compliance as "electronically to nlichtenberger@onellp.com and ndilger@onellp.com." Ex. B at 2. However, "[a] valid subpoena must list a specific place of compliance, pursuant to Rule 45(a)(1)(A)(iii) and "an email address does not qualify as a location or place where compliance is required under Rule 45." *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21cv1197-W-MDD, 2022 U.S. Dist. LEXIS 127870, at *19 (S.D. Cal. July 18, 2022), citing *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 710 (N.D. Tex. 2017).

## CONCLUSION

For the foregoing reasons, Jumio respectfully requests that the Court grant this motion to quash the Subpoena.

Dated: October 11, 2023  **HATCH LAW, PC**

*/s/ Ryan E. Hatch*
Ryan E. Hatch
Hatch Law, PC
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Work: 310-279-5076
Mobile: 310-435-6374
Fax: 310-693-5328
ryan@hatchlaw.com

*Attorneys for Nonparty,
Jumio Corporation.*

# CERTIFICATE OF SERVICE

I am a citizen of the United States and I am employed in California. I am over the age of eighteen years, and not a party to the within action. My business address is Hatch Law, PC, 13323 Washington Blvd., Suite 302, Los Angeles, CA 90066. On the date set forth below I served the attached document in the manner described below:

☐ (BY U.S. MAIL) I am personally and readily familiar with the business practice of Hatch Law PC for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Palo Alto, California.

☐ (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐ (BY FACSIMILE) I am personally and readily familiar with the business practice of Hatch Law PC for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Cooley LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by for overnight delivery.

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Hatch Law PC for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following parties in this action:

See attached service list.

Executed on October 11, 2023, at Los Angeles, CA.

                                                     */s/ Ryan E. Hatch*
                                                     Ryan E. Hatch

# SERVICE LIST

| | |
|---|---|
| F. Christopher Austin<br>Email: caustin@weidemiller.com<br>**WEIDE & MILLER, LTD.**<br>10655 Park Run Drive<br>Suite 100<br>Las Vegas, NV 89144<br>Telephone: (702) 382-4804<br>Facsimile: (702) 382-4805<br><br>*Attorneys for Plaintiff/Counter-Defendant,<br>FaceTec, Inc.* | Nathaniel L. Dilger<br>Email: ndilger@onellp.com<br>Peter R. Afrasiabi<br>Email: pafrasiabi@onellp.com<br>**ONE LLP**<br>23 Corporate Plaza<br>Suite 150-105<br>Newport Beach, CA 92660<br>Telephone: (949) 502-2870<br>Facsimile: (949) 258-5081<br><br>*Attorneys for Plaintiff/Counter-Defendant,<br>FaceTec, Inc.* |
| William J. O'Brien<br>Email: wobrien@onellp.com<br>**ONE LLP**<br>9301 Wilshire Blvd<br>Penthouse Suite<br>Beverly Hills, CA 90210<br>Telephone: (310) 866-5157<br>Facsimile: (949) 943-2085<br><br>*Attorneys for Plaintiff/Counter-Defendant,<br>FaceTec, Inc.* | |